UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HERMAN REED, SR., INDIVIDUALLY AND ON BEHALF OF HIS MINOR SON, HERMAN REED, JR. | CIVIL ACTION NO. 04-1116 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE, ET AL. | MAG. JUDGE JAMES D. KIRK |

**RULING**

  Pending before the Court is Plaintiff's "Motion to Alter or Amend the Judgment, to Conform the Judgment to the Verdict or for a Judgment Notwithstanding the Verdict or in the Alternative for New Trial" ("Motion to Alter") [Doc. No. 60]. Defendants filed a memorandum in opposition to the Motion to Alter [Doc. No. 63]. Plaintiff also filed a Supplemental Memorandum in Support of the Motion to Alter [Doc. No. 62].

  For the following reasons, the Motion to Alter is DENIED.

**I. PERTINENT FACTS AND PROCEDURAL HISTORY**

  On May 20, 2004, this lawsuit was originally filed by Plaintiff Herman Reed, Sr. ("Reed, Sr.") on behalf of his then-minor son, Herman Reed, Jr. ("Reed, Jr.") against Defendants the City of Monroe ("the City") and Police Officers Timothy Antley ("Antley") and Charles Johniken

1

("Johniken").[1] Reed, Sr. alleged that Reed, Jr.'s constitutional rights under 42 U.S.C. § 1983 were violated during his arrest for trespassing on the grounds of Carroll Junior High School ("CJHS"). Specifically, Reed, Sr. alleged that Johniken arrested Reed, Jr. without probable cause and that Antley and Johnikin used excessive force during his arrest. Reed, Sr. further alleged that Johniken was liable under state law for the malicious prosecution of Reed, Jr.

On February 21, 2006, a jury trial commenced. During trial, Reed, Jr. was substituted as Plaintiff since he had reached the age of majority.

The events at issue took place on May 20, 2003. Some time prior to that date, Reed, Jr. had been expelled from Carroll High School. On May 20, Johnikin was serving as a school resource officer. He testified that shortly before school ended he saw Reed, Jr. and another male trespassing on the grounds of CJHS. Reed, Jr. and his witnesses testified that he was on a strip of property belonging to the parish library and adjacent to the school grounds.

Reed, Jr. crossed the street and at approximately 2:45 P.M. he was arrested by Johniken and Antley. During the arrest, Reed, Jr. was placed on the hood of a police car. Reed, Jr. testified that he lifted his arms off the hood because it was hot, but Defendants presented testimony that he was resisting arrest. It is undisputed that Antley broke Reed, Jr.'s left arm during the arrest. It also undisputed that Reed, Jr. was arrested for trespassing and resisting by violence.

---

[1]Reed, Sr. also named the Ouachita Parish School Board and Monroe police officer Chase Machen as Defendants. The school involved was actually located in the Monroe City School Board district, but Reed, Sr. dismissed both the Monroe City School Board and Chase Machen as Defendants prior to trial. [Doc Nos. 32 & 34].

2

After three days of evidence, the jury began deliberating on February 23, 2006, at 2:40 P.M. During deliberations, the jury sent the Court a note requesting Johniken's and Antley's reports of the arrest. *See* [Doc. No. 57 (Jury Note #1)]. After conferring with counsel, the Court sent a note to the jury explaining that the reports were not in evidence and could not be provided. The jury did not send any further notes to the Court prior to rendering its verdict.

At approximately 4:40 P.M., the jury returned its verdict. Dorothy Wylie ("Wylie"), the foreperson, handed the Court Security Officer the verdict form with two items attached behind it. The first item was Jury Note #1. The second item was a pink piece of paper with the following message written on it: "We are all in agreement of our decision. We do feel, however, that Mr. Reed, Sr. should be reimbursed for medical expenses." Neither the Court nor the Deputy Clerk noticed the pink note prior to the rendering of the jury's verdict.

The verdict form was handed to the Court. After reviewing the verdict form to determine if the interrogatories were answered consistently, the Court handed the verdict form to the Deputy Clerk. The Deputy Clerk then read the verdict aloud. The jury found that (1) Johnikin had not arrested Reed, Jr. without probable cause, (2) Johnikin and Antley had not used excessive force against Reed, Jr., and (3) Johnikin had not engaged in the malicious prosecution of Reed, Jr. Consistent with these findings, the jury did not award any damages.

Following the reading of the verdict, the Deputy Clerk polled the jury members. Each jury member indicated individually that he or she agreed with the verdict.

However, after the Court released the jurors, the Deputy Clerk was reviewing the documents and found the pink note from the jury. She notified the Court about the note.

On March 3, 2006, the Deputy Clerk faxed a copy of the note to counsel for both parties.

On March 7, 2006, Reed, Jr. filed this Motion to Alter. After reviewing that motion, it was clear to the Court that counsel misunderstood how and when the note was provided by the jury. Accordingly, on March 10, 2006, the Court issued a minute entry explaining exactly how the note came into the possession of the Deputy Clerk. The Court granted Reed, Jr. leave to file a supplemental memorandum.

On March 14, 2006, Reed, Jr. filed his Supplemental Memorandum.

On March 20, 2006, Defendants filed a Memorandum in Opposition to the Motion to Alter.

## II. LAW AND ANALYSIS

### A. Standards of Review[2]

#### 1. Motions for Judgment Notwithstanding the Verdict

In the Fifth Circuit, the standard of review for motion for judgment not withstanding a verdict or a motion for judgment as a matter of law is set forth in *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir.1969)(en banc), overruled in part on other grounds, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir.1997) (en banc):

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence-not just that evidence which supports

---

[2] Plaintiff also moves the Court to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e), which permits the Court to amend a judgment if presented with newly discovered evidence not previously available, if there has been an intervening change in the controlling law, or if to correct a clear error or to prevent manifest injustice. *See In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002). However, the Court has not yet entered a judgment, and a Rule 59(e) motion is not appropriate.

4

the non-mover's case-but in the light and with all reasonable inferences most
favorable to the party opposed to the motion. If the facts and inferences point so
strongly and overwhelmingly in favor of one party that the Court believes that
reasonable men could not arrive at a contrary verdict, granting of the motions is
proper. On the other hand, if there is substantial evidence opposed to the motions,
that is, evidence of such quality and weight that reasonable and fair-minded men
in the exercise of impartial judgment might reach different conclusions, the
motions should be denied, and the case submitted to the jury. The motions for
directed verdict and judgment n.o.v. should not be decided by which side has the
better of the case, nor should they be granted only when there is a complete
absence of probative facts to support a jury verdict. There must be a conflict in
substantial evidence to create a jury question. However, it is the function of the
jury as the traditional finder of the facts, and not the Court, to weigh conflicting
evidence and inferences, and determine the credibility of witnesses.

*Id.* at 374-75 (footnote omitted).

### 2. Motions for New Trial

A district court may grant a new trial under Rule 59(a) if the court finds that the verdict is against the great weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed. *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A district court has "sound discretion" to grant or deny new trial motions. *See Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

### B. Analysis

In this case, Reed, Jr. argues that the jury note, coupled with the evidence against Antley, supports his motion for judgment notwithstanding the verdict or, alternatively, for new trial. In support of his contention, Reed, Jr. argues that "it is most likely that the jury was confused by the verdict form as to how to limit the damages to Reed Sr.'s medical expenses." [Doc. No. 62, pp. 5-6]. Reed, Jr. argues further that the evidence at trial supports a finding of liability against Antley for his use of excessive force, resulting in a break to Reed, Jr.'s left arm, and that the

jury's finding of no liability "strain[s] credulity." [Doc. No. 62, p. 6]. Therefore, the Court should grant judgment notwithstanding the verdict in favor of Reed, Jr. and against Antley, limiting damages to the medical expenses incurred by Reed, Sr. Alternatively, Reed, Jr. moves for a new trial against Antley only.

In response, Defendants rely on a state court case, *Willis v. Louisiana Power and Light Co.*, 524 So.2d 42 (La. App. 2 Cir. 1988). In *Willis*, the jury completed an "Interrogatories to the Jury" form. The jury had used the form to tally votes taken during deliberations. The form showed that initially the jury found the defendant at fault by a vote of 9-3, but this vote and a later vote of 8-4 were crossed out. The final vote showed that the jury found the defendant was not at fault by a vote of 10-2. The court instructed the jury to return to the jury room to complete deliberations and to record the results on a replacement copy of the first page of the original form. After the jury returned a completed form in which it found no fault on the part of the defendant, the trial court granted plaintiffs' motion for judgment notwithstanding the verdict and, conditionally, a new trial, on the basis that the initial vote constituted a verdict. *Id.* at 44-45.

On appeal, the Louisiana Second Circuit reversed the trial court and found that the trial court was wrong in determining that the preliminary vote constituted the verdict. Rather, "[j]ury deliberations are not complete until the jury returns its verdict to the trial judge," and the "jury verdict is rendered only after it is returned to the court and accepted by the court." *Id.* at 45 (citing La. Code Civ. P. arts. 1812 and 1813).

While the *Willis* case is not precedential nor particularly persuasive since it relies on two Louisiana Civil Code Articles, the Court agrees with Defendants that the jury's note in this case

6

does not support a judgment in favor of Reed, Jr. or a new trial. Although the Court could not find a Fifth Circuit case which has addressed this issue or one similar to it, a Tenth Circuit Court of Appeals case provides analysis which the Court finds persuasive.

In *Allen v. Minnstar, Inc.*, 97 F.3d 1365 (10th Cir. 1996), a passenger injured in a boating accident brought a products liability action against the manufacturer of the boat and the manufacturer of the boat's engine. During deliberations, the jury sent a note to the court inquiring whether it could make a statement to the court about the verdict if it found that the boat was not defective. The court responded:

> No, you cannot make a statement that is to be considered a part of your verdict. You must make your decision as you have been instructed and in accordance with the questions on the Special Verdict Form. After your verdict has been received by the court and you have been polled to determine that your verdict is unanimous, the court will give further consideration to your request.

*Id.* at 1371. Following a defense verdict and polling of the jurors, the district court instructed the jurors that they could make a statement. One of the jurors stated:

> This was a hard decision for all of us to make. I would like to direct a statement to Wellcraft [the defendant boat manufacturer]. Even though we found that the boat was not unreasonably dangerous or defective, we do 100 percent feel that the boat was unsafe. And we want to charge you with extra caution to try and design boats that would preclude anyone from having an accident of this nature.

*Id.* at 1372.

Following the juror's statement, the district court denied a motion by plaintiff for a new trial.

On appeal to the Tenth Circuit, the plaintiff argued that he was entitled to a new trial because of the jury's confusion, evidenced by their notes and the juror's post-verdict statement.

7

The plaintiff claimed that "the verdict does not accurately represent the jury's findings." *Id.* at 1373. The Tenth Circuit found no basis in the record to disturb the district court's conclusion that "the jury considered the issues carefully, and knew exactly what they were doing," and that the juror's post-verdict statement indicated only that "some members of the jury may have felt that defendant could have done better in designing the boat," not that it failed to understand "the nature of the legal standard for finding defendant legally liable." *Id.* The Tenth Circuit further explained:

> Although plaintiff claims the jury did not understand the meaning of "unreasonably dangerous," it is significant to note that plaintiff has not challenged any of the instructions given by the court to the jury, and has not claimed the court should have given additional or supplemental instructions to help clarify the terms at issue. Rather, plaintiff's argument is entirely speculative and could arguably be raised in any case in which a jury presents questions to a trial court. As we have previously noted, "a verdict will not be upset on the basis of speculation about possible jury confusion."[3]

*Id.* (citation omitted).

Similarly, in this case, the Court finds that Reed, Jr.'s claims are merely speculative. The jury carefully followed the instructions and prepared a verdict form that was consistent with those instructions. The fact that some or even all of the members may have felt that it was unfair for Reed, Sr. to bear the medical expenses for an injury caused by Antley does not mean that they

---

[3] The Tenth Circuit also noted that the "plaintiff's attempt to impeach the jury's verdict based upon a juror's post-verdict statement is prohibited by Federal Rule of Evidence 606(b)." *Id.* (citing *United States v. Wickersham*, 29 F.3d 191, 194 (5th Cir. 1994) (other citations omitted)). While Rule 606(b) has some possible application in this case, the Court does not rely on this rule because the statement was actually submitted simultaneously with the verdict. It was not discovered until post-verdict, and no juror alerted the Court to the note prior to rendering the verdict.

8

failed to understand the legal standard for liability under Section 1983. The jury could have felt that Antley was negligent, or the members could have believed that the injury was an accident, neither of which is inconsistent with the jury's determination that Antley was not liable for intentional misconduct under Section 1983.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Alter [Doc. No. 60] is DENIED.

MONROE, LOUISIANA, this 22nd day of May, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE